# STATE OF MICHIGAN

# COURT OF APPEALS

CENTER STREET LOFTS CONDOMINIUM
ASSOCIATION,

        Plaintiff-Appellant,

v

CENTER STREET PARTNERS L.L.C., L & A,
INC., doing business as L & A STRUCTURAL
ENGINEERS, and SACHSE CONSTRUCTION
AND DEVELOPMENT CORPORATION,

        Defendants,

and

AZD ASSOCIATES, INC.,

        Defendant-Appellee,

and

SACHSE CONSTRUCTION AND
DEVELOPMENT COMPANY L.L.C.,

        Defendant-Third Party Plaintiff,

and

INGRAM ROOFING, INC., DAMICO
CONTRACTING, INC., and GEM GLASS, INC.,

        Defendants-Third Party Defendants.

UNPUBLISHED
December 22, 2016


No. 328526
Oakland Circuit Court
LC No. 2013-135591-CK

Before: SAAD, P.J., and METER and MURRAY, JJ.

PER CURIAM.

-1-

Plaintiff, Center Street Lofts Condominium Association, appeals the trial court's order that dismissed all of its claims after defendant AZD Associates, Inc.'s motion for summary disposition was granted. For the reasons provided below, we affirm.

## I. BASIC FACTS

Plaintiff is the association created to serve the individual owners of the Center Street Lofts Condominiums, a condominium project in Royal Oak, the design of which is the subject of this lawsuit. AZD Associates, Inc. ("AZD") is the architecture firm that designed the project pursuant to contract with the developer, whose rights were later assigned to plaintiff. AZD subcontracted the construction of the project to former defendant L & A, Inc., on November 1, 2004. Plaintiff and AZD are the only parties to this appeal.[1]

The contract between plaintiff and AZD specified that AZD was to perform the preliminary design, prepare construction documents for the shell, provide interior design services for the entire project, and be available for site administration on an hourly basis. The exact date on which AZD began providing services to plaintiff is unclear, although it was certainly sometime in 2003.

A letter from AZD to plaintiff seems to indicate that the architectural design was completed sometime shortly after February 2005. It cannot be determined from the record *exactly* when construction was complete. However, around June 2007, there was a dispute between the general contractor, Sachse, and the developer, which resulted in a June 15, 2007, settlement agreement, where plaintiff "fully accept[ed]" Sachse's work and acknowledged that the work was "fully complete."

Sachse was called upon to complete warranty work as contemplated in the settlement agreement when it received complaints from the owners of multiple units about water intrusion beginning on December 18, 2007. Although Sachse continued to work on the complaints, the leaks continued, and plaintiff hired, at great expense, other companies to identify and correct the problems.

Plaintiff filed its complaint against all defendants on August 9, 2013, and later filed amended complaints on December 11, 2013, and April 16, 2014. Plaintiff alleged the following counts against defendant AZD: breach of contract/professional negligence, indemnification, unlicensed practice of architecture, gross negligence, and unjust enrichment.

On December 29, 2014, AZD moved for summary disposition pursuant to MCR 2.116(C)(7) and (10). The trial court granted the motion and held that plaintiff's claims against

---

[1] Plaintiff's claims against L & A were dismissed by the trial court, and plaintiff did not appeal. Defendant Sachse Construction and Development Corporation ("Sachse") was the general contractor and is not party to this appeal because it reached a settlement agreement with plaintiff.

AZD were time barred pursuant to MCL 600.5839(1).[2] The court also noted that there is no private cause of action for the unlicensed practice of architecture under MCL 339.2010.

Plaintiff filed a motion for partial reconsideration, which the trial court denied. In that order, the court opined that plaintiff's claims would still be time barred under MCL 600.5807(8)[3] or MCL 600.5813[4] because AZD performed the last of its architectural design work more than six years before plaintiff filed its complaint.

## II. ANALYSIS

We review de novo a trial court's grant or denial of a motion for summary disposition. *Dybata v Wayne Co*, 287 Mich App 635, 638; 791 NW2d 499 (2010). Matters of statutory interpretation are also reviewed de novo. *Id.*

Summary disposition is appropriate when a claim is barred by the applicable statute of limitations. MCR 2.116(C)(7). When considering a motion brought under MCR 2.116(C)(7), "the trial court must consider any affidavits, depositions, admissions, or other documentary evidence submitted by the parties to determine whether there is a genuine issue of material fact precluding summary disposition." *Dybata*, 287 Mich App at 637, citing MCR 2.116(G)(5). "We must consider the documentary evidence in a light most favorable to the nonmoving party . . . ." *Moraccini v City of Sterling Heights*, 296 Mich App 387, 391; 822 NW2d 799 (2012). "If no facts are in dispute, or if reasonable minds could not differ regarding the legal effect of those facts, then the question whether the claim is barred . . . is an issue of law." *Dybata*, 287 Mich App at 637.

At the outset, we first must ascertain plaintiff's claims against AZD. In plaintiff's complaint, plaintiff alleges several counts against AZD: breach of contract/professional negligence, indemnification, unlicensed practice of architecture, gross negligence, and unjust enrichment.

> In deciding which period of limitations controls, we must first determine the true nature of the claim[s]. The type of interest allegedly harmed is the focal point in determining which limitation period controls. It is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim[s]. [*Adams v Adams*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007) (quotation marks and citations omitted).]

---

[2] MCL 600.5839(1) provides for the applicable period of limitations for claims for injury to person or property against any "state licensed architect."

[3] MCL 600.5807(8) provides for a six-year period of limitations for a breach of contract claim.

[4] MCL 600.5813 is a "catch-all" provision that provides for a six-year period of limitations.

Here, plaintiff's claims of professional negligence, gross negligence, indemnification,[5] and unjust enrichment[6] all sound in negligence/malpractice. All of these purport to address the same harm—that AZD *negligently* performed its professional architectural work. Plaintiff's attempt to frame this claim in other ways is unavailing. Thus, plaintiff's complaint can fairly be read to allege three counts: unlicensed practice of architecture, negligence/professional malpractice, and breach of contract.

## A. UNLICENSED PRACTICE OF ARCHITECTURE

Plaintiff's claim of unlicensed practice of architecture under MCL 339.2006(1) arises from its contention that AZD was not properly licensed to engage in the practice of architecture because MCL 339.2010(1) requires such an architecture firm to have no less than 2/3 of its principals be licensed architects. And, here, plaintiff alleged that AZD had two principals, with only one being a licensed architect.

However, regardless of what percentage of AZD's principals were licensed architects, plaintiff's contention that MCL 339.2006(1) provides it with a private cause of action is meritless. MCL 339.2006(1), which is contained in Article 20 of the Occupational Code, provides in pertinent part the following:

> *A person* who has utilized the services of *a person* engaging in or attempting to engage in an occupation regulated under this article or using a title designated by this article without being licensed by the department may bring an action in a court of competent jurisdiction, or offer as a counterclaim to an action brought by an unlicensed person, for a refund of compensation after deducting the value of the goods or services retained by the person. [Emphasis added.]

However, a "person" is defined in Article 20 as "a natural person notwithstanding section 105(5)." MCL 339.2001(c). Thus, with both plaintiff and AZD not being natural persons, it is clear that this statute does not permit plaintiff to bring a cause of action against AZD.

Plaintiff also argues that there can be no right without a remedy under the laws of the state of Michigan and that it is therefore entitled to a civil remedy under Article 6, MCL 339.601.

---

[5] Plaintiff's claim of indemnification sounds in negligence because indemnification intends "to make whole again a party held vicariously liable to another through no fault of his own," *Botsford Continuing Care Corp v Intelistaf Healthcare, Inc*, 292 Mich App 51, 62; 807 NW2d 354 (2011), but plaintiff here is not being held vicariously liable for any damages. Instead, plaintiff merely is attempting to recover direct damages for AZD's alleged misconduct.

[6] "Unjust enrichment is defined as the unjust retention of money or benefits which in justice and equity belong to another." *Tkachik v Mandeville*, 487 Mich 38, 47-48; 790 NW2d 260 (2010) (quotation marks and citation omitted). Here, plaintiff makes no allegation that the money it paid to AZD belongs to anyone other than AZD. As with plaintiff's other claims, plaintiff seeks *damages*—not the return of property it rightfully owns.

However, this Court has held that there is no private cause of action under MCL 339.601. *Claire-Ann Co v Christenson & Christenson, Inc*, 223 Mich App 25, 30-31; 566 NW2d 4 (1997). The Court noted that Article 6 "provides criminal penalties for practicing an occupation subject to licensure without the requisite license . . . and permits an 'affected person' to maintain injunctive action to restrain or prevent a person from practicing an occupation without a license." *Id.* at 30 (citations omitted). This Court concluded that Article 6 contains no intimation that the Legislature intended private persons to be able to bring civil actions to enforce any of the Act's provisions and that "a private right of action will not be inferred" under Michigan jurisprudence when a new right or duty is created by a statute that "provides a comprehensive administrative or other enforcement mechanism or otherwise entrusts the responsibility for upholding the law to a public officer." *Id.* at 30-31; see also *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 535; 872 NW2d 412 (2015) ("By expressly conferring enforcement authority only on prosecutors and the Attorney General, the statute would seem by implication not to confer similar authority on a private party."). Therefore, Article 6 of the Act does not provide for a private right of action, except for a plaintiff who wishes to seek an injunction against an unlicensed practice. Accordingly, we hold that plaintiff has no private right of action under MCL 339.601 and summary disposition was proper for this claim.[7]

## B. PROFESSIONAL MALPRACTICE/NEGLIGENCE

Plaintiff argues that the trial court erred when it granted summary disposition to AZD to the extent that the decision was based on the court's determination that plaintiff's claims were time barred by the limitations period found in MCL 600.5839.

MCL 600.5839 provides:

(1) A person shall not maintain an action to recover damages for injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective or unsafe condition of an improvement to real property, or an action for contribution or indemnity for damages sustained as a result of such injury, *against any state licensed architect . . .* performing or furnishing the design or supervision of construction of the improvement . . . unless the action is commenced within either of the following periods:

(a) Six years after the time of occupancy of the completed improvement, use, or acceptance of the improvement.

(b) If the defect constitutes the proximate cause of the injury or damage for which the action is brought and is the result of gross negligence on the part of

---

[7] Technically, summary disposition was proper under MCR 2.116(C)(8) because plaintiff "has failed to state a claim on which relief can be granted." The fact that neither AZD nor the trial court cited to this subrule is not controlling. See *Wickings v Arctic Enterprises, Inc*, 244 Mich App 125, 150; 624 NW2d 197 (2000) (stating that this Court may affirm a grant of summary disposition on different grounds than relied upon by the trial court).

the contractor or licensed architect or professional engineer, 1 year after the defect is discovered or should have been discovered. However, an action to which this subdivision applies shall not be maintained more than 10 years after the time of occupancy of the completed improvement, use, or acceptance of the improvement. [Emphasis added.]

Consistent with its other claim, plaintiff asserts that AZD was not a "state licensed architect" because it was in violation of MCL 339.2010(1) during the relevant time period. MCL 339.2010(1) provides that "[a] firm may engage in the practice of architecture, professional engineering, or professional surveying in this state, if not less than 2/3 of the principals of the firm are licensees." That section contains an exception if the firm takes certain actions, none of which AZD claims to have taken. MCL 339.2010(2)-(4).

We disagree with plaintiff's view. The statute of limitations in MCL 600.5839 applies to actions against "state licensed architect[s]." That term is defined in MCL 600.5839(3)(b), in relevant part, as "a corporation, partnership, or other business entity on behalf of whom the state licensed architect . . . is performing or directing the performance of the architectural . . . service." There is no dispute that Frank Zychowski is the licensed architect who was directing the performance of the architectural services. Thus, AZD qualifies as a "state licensed architect" under this statute, regardless of how many of AZD's principals were individually licensed architects. We do not believe that whether AZD's corporate form complied with MCL 339.2010 is dispositive and, instead, is a separate issue. Accordingly, we hold that AZD properly qualifies as a "state licensed architect" under the Act for purposes of plaintiff's lawsuit, and therefore, the statute of limitations in MCL 600.5839 applies.

Thus, the six-year period of limitations started to run at "the time of occupancy of the completed improvement, use, or acceptance of the improvement." The evidence shows that certificates of occupancy were issued in early 2007, and more importantly, plaintiff acknowledged in June 2007 that the construction work was "fully complete" and "fully accept[ed]" it. Thus, the six-year limitations period ended at the latest in June 2013. Because plaintiff filed its complaint in August 2013, its claims are time barred. Furthermore, MCL 600.5839(1)(b)'s allowance for filing a claim within one year of discovering the defect does not assist plaintiff. As the trial court properly ruled, plaintiff knew by August 2011 that there was a flashing issue with the design and construction, which contributed to the water intrusion. One year from that discovery point is August 2012, which again makes plaintiff's August 2013 complaint untimely.

Moreover, assuming arguendo that AZD does not qualify as a "state licensed architect" because 2/3 of its principals were not licensed architects during the relevant time, the period of limitations for plaintiff's claim of negligence would be three years under MCL 600.5805(10).[8]

---

[8] We note that, in this context, we presume that AZD does not qualify as a "state licensed architect," and because of that, the two-year period of limitations for professional malpractice in MCL 600.5805(6) would not apply.

Under MCL 600.5837, "the period of limitations runs from the time the claim accrues," and "the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." The Supreme Court, while acknowledging that a claim accrues "at the time the wrong upon which the claim is based was done," held that "the wrong is done when the plaintiff is harmed rather than when the defendant acted." *Trentadue v Buckler Lawn Sprinkler*, 479 Mich 378, 388; 738 NW2d 664 (2007) (quotation marks and citations omitted). Here, the alleged "wrong upon which the action is based" is the negligent design of the condominium project. Defendant designed the condominium project sometime between 2003 and 2005. The damage could not possibly have occurred when the alleged negligence occurred, however, because construction on the project had not yet begun. The problem could still have been corrected at that point without any injury to plaintiff.

Plaintiff argues that damage did not occur, and thus the claim did not accrue, until the water intrusion was first noticed on December 18, 2007, in one of the condominium units. Therefore, plaintiff maintains that its claim was timely filed five years, eight months later on August 9, 2013. We disagree. First, from a purely practical standpoint, damage necessarily was occurring out of view well before it resulted in *visible* water damage. Second, if water intrudes but no one sees it (as would be the case for example, if the owners of the first condo unit to have water intrude had been in Florida for the winter on that date), the damage would still have occurred. Interpreting the statute the way plaintiff suggests would mean that actionable damage never occurs until a plaintiff becomes aware of it. This would render nugatory the phrase "regardless of when the damage occurs" in MCL 600.5827.[9] In our view, the "damage" actually occurred when the portions of the project that were negligently designed were actually built, i.e., when the problem could no longer be corrected without the need for plaintiff to spend money on redesign and reconstruction. It was at that point that all elements of negligence were in existence, though plaintiff at the time did not know that its legal rights had been impinged upon.

Here, construction was substantially completed in early 2007. Indeed, plaintiff acknowledged in its June 15, 2007 settlement with Sachse, the general contractor, that the construction had been "fully complete[d]." As a result, a three-year limitations period started at the latest in June 2007 and ended in June 2010. Accordingly, because plaintiff filed its complaint in 2013, well after this limitation period lapsed, plaintiff's claim of negligence is time barred.

## C. BREACH OF CONTRACT

The limitations period for a breach of contract action is six years. *Seyburn, Kahn, Ginn, Bess, Deitch & Serlin, PC v Bakshi*, 483 Mich 345, 355; 771 NW2d 411 (2009), citing MCL

---

[9] Plaintiff also argues that the date of discovery controls, but this argument is only relevant if the architect's statute of limitations in MCL 600.5839 applies because *that* statute includes a one-year discovery rule. MCL 600.5839(1)(b). Otherwise, the common-law discovery rule was abrogated by the Revised Judicature Act in 1961. *Trentadue*, 479 Mich at 390-391.

600.5807(8).[10]  As already noted, "[a] claim accrues, and the limitations period begins to run, when the claim may be brought." *Id*. at 355, citing MCL 600.5827.  "For a breach of contract action, the limitations period generally begins to run on the date that the breach occurs," *id.*, and "[a] contract is breached when one party fails to perform its portion of the contract," *id.* at 359.  Importantly, as before, the claim can accrue whether or not the non-breaching party is aware that his or her legal rights have been invaded at the time of the breach. *Harris v City of Allen Park*, 193 Mich App 103, 106; 483 NW2d 434 (1992).

Because AZD completed its design work in December 2006, it is apparent that any breach occurred by that time.  As a result, the six-year limitations period would have ended in December 2012.  Because plaintiff did not file its complaint until August 2013, its claim was barred.  Moreover, assuming that AZD had a continuing obligation during the construction process and breached its contractual duty during the ongoing construction, as previously noted, the record shows that the construction was completed by June 2007.  Therefore, any six-year limitations period would have ended in June 2013, which renders plaintiff's August 2013 complaint untimely.[11]

Affirmed.  AZD, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Henry William Saad
/s/ Patrick M. Meter
/s/ Christopher M. Murray

---

[10] We note that MCL 600.5807(8) would apply to plaintiff's breach of contract claim regardless of AZD's status as a "state licensed architect" under MCL 600.5839(1) because that statute of limitations only applies to tort actions and not actions for breach of contract. *Miller-Davis Co v Ahrens Constr, Inc*, 489 Mich 355, 371; 802 NW2d 33 (2011).

[11] Plaintiff asserts that its claim for breach of contract did not accrue until it suffered damages, which plaintiff avers was on December 18, 2007, when the water intrusion was first noticed.  As we have already noted, "damages" occurred before visible water damage occurred.  Indeed, the fact that the units were constructed from day one with this alleged defect is enough to establish "damages" under the contract.  In other words, at the time construction was complete, plaintiff did not receive the bargain-for benefit of a viable design—thus, this is when its contract claim accrued.